[No. A125292. First Dist., Div. Three. May 5, 2011.]

CALIFORNIA ATTORNEYS, ADMINISTRATIVE LAW JUDGES, AND HEARING OFFICERS IN STATE EMPLOYMENT et al., Plaintiffs and Respondents, v.
EDMUND G. BROWN, JR., as Governor, etc., et al., Defendants, Cross-defendants and Appellants;
JAN FRANK, Defendant, Cross-complainant and Respondent;
JOHN CHIANG, as Controller, etc., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 1. of the Discussion and footnote 3.

**COUNSEL**

Kronick, Moskovitz, Tiedemann & Girard, David W. Tyra, Kristianne T. Seargeant; K. William Curtis, Warren C. Stracener, Linda A. Mayhew and Will M. Yamada for Defendants, Cross-defendants and Appellants.

Patrick J. Whalen for Plaintiffs and Respondents.

Manatt, Phelps & Phillips, Ronald B. Turovsky, Benjamin G. Shatz and Becky S. Walker for Defendant, Cross-complainant and Respondent.

Richard J. Chivaro, Ronald V. Placet, Shawn D. Silva, Ana Maria Garza; Remcho, Johansen & Purcell, Robin B. Johansen and Margaret R. Prinzing for Defendant and Respondent.

**OPINION**

**POLLAK, J.**—The Governor and the Director of the Department of Personnel Administration (Director) appeal from an order and judgment granting a

petition for writ of mandate prohibiting defendants from implementing fur-loughs for employees of the State Compensation Insurance Fund (State Fund). Defendants argue that the court erred in failing to stay this action under the doctrine of exclusive concurrent jurisdiction and, alternatively, that the court incorrectly determined that Insurance Code[1] section 11873 prohibits the Gover-nor from furloughing State Fund employees. Following remand of this case from the Supreme Court and the change in administration, the parties stipu-lated to the dismissal of the appeal and issuance of a remittitur affirming the trial court's judgment as the final judgment in the matter. Because the authority of the Governor to order the furlough of State Fund employees is an issue of continuing public interest, we have declined to dismiss the appeal and shall, in the published portion of this opinion, set forth the reasons for which the trial court correctly concluded that the Governor lacks such authority.[2] In the unpublished portion of the opinion we conclude that the trial court was also correct in refusing to stay the action. We shall therefore affirm the trial court's judgment.

## Factual and Procedural History

On December 19, 2008, Governor Arnold Schwarzenegger issued Executive Order No. S-16-08. The order recites that the state is facing a fiscal and cash crisis and that the general fund deficit was projected to grow to $42 billion over the following 18 months. Finding that "a furlough will reduce current spending and immediately improve the State's ability to meet its obligations to pay for essential services," the order directs the Director to "adopt a plan to implement a furlough of represented state employees and supervisors for two days per month, regardless of funding source. This plan shall include a limited exemption process."

On February 10, 2009, after the Sacramento Superior Court had denied a petition seeking to prohibit the Governor from implementing the furlough order with respect to executive branch employees,[3] and after the Director indicated that the furlough order would be applied to State Fund employees, California Attorneys, Administrative Law Judges and Hearing Officers in State Employment (CASE) and individual plaintiffs Glen Grossman, Mark Henderson and Geoffrey Sims filed the present action in San Francisco Superior Court against the Governor, the Director, John Chiang, as State

---

[1] All statutory references are to the Insurance Code unless otherwise noted.

[2] With respect to the court's discretion to deny a stipulated dismissal of the appeal, see generally 9 Witkin, California Procedure (5th ed. 2008) Appeal, sections 735–736, 759, pages 800–804, 828–830.

[3]* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 119.

Controller, and Jan Frank, as president of State Fund.[4] The petition seeks an injunction prohibiting the Governor from imposing the furloughs on CASE members employed by State Fund on the ground that section 11873 prohibits the Governor from furloughing State Fund employees. After briefing and argument, the court agreed with CASE that section 11873 prohibits the Governor from furloughing State Fund employees. An order granting the writ of mandate and a corresponding judgment were entered on April 15. The Governor and the Director filed a timely notice of appeal and the trial court subsequently granted CASE relief from the automatic stay provisions of Code of Civil Procedure section 916, subdivision (a).

On March 19, 2010, this court affirmed the judgment of the superior court. On May 19, 2010, the Supreme Court granted review (S182581) and, following its decision in *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989 [116 Cal.Rptr.3d 480, 239 P.3d 1186], transferred the matter back to this court for reconsideration in light of that decision. After considering supplemental briefs submitted by the parties, we find nothing in the Supreme Court decision inconsistent with our prior conclusions and therefore again affirm the trial court's judgment.[5]

## Discussion

1. *Exclusive Concurrent Jurisdiction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[4] In the trial court, the Controller and the State Fund president did not take a position on the merits. On appeal, both the Controller and the State Fund president have filed briefs arguing that the judgment should be affirmed.

[5] This case involves State Fund employees rather than employees of the executive branch and its resolution turns on different statutory provisions from those at issue in *Professional Engineers in California Government v. Schwarzenegger, supra,* 50 Cal.4th 989. Moreover, to the extent the Supreme Court decision furnishes any guidance here, our holding is supported by the court's conclusion: "we find unpersuasive the Governor's contention that either the constitutional authority granted to him by the California Constitution or the existing statutory provisions pertaining to the terms and conditions of state employment granted him or the [Director] the authority unilaterally to impose a mandatory unpaid furlough on state employees." (*Id.* at p. 1041.) Funding for the compensation of State Fund employees is not included in the annual budget act. (§ 11774; 15 Ops.Cal.Atty.Gen. 210, 211 ["All salaries and other expenses of the State Fund are paid out of premiums received from its contributing policy holders . . . ."].) Therefore, the legislation revising the 2008 Budget Act and approving the Budget Act of 2009 that the court held to have authorized furloughs for executive branch employees has no application to State Fund personnel. (See 50 Cal.4th at pp. 1005–1006, 1043–1052; Stats. 2009, 3d Ex. Sess. 2009–2010, chs. 1, 2.)

*See footnote, *ante,* page 119.

## 2. *Section 11873*

■ The California Constitution vests the Legislature with plenary power "to create . . . and enforce a complete system of workers' compensation, . . . including the establishment and management of a State compensation insurance fund . . . ." (Cal. Const., art. XIV, § 4.) The Legislature has exercised this authority by creating State Fund within the provisions of the Insurance Code. (§ 11770 et seq.) Section 11873, subdivision (a) provides that except for several provisions specified in subdivision (b), "the fund shall not be subject to the provisions of the Government Code made applicable to state agencies generally or collectively, unless the section specifically names the fund as an agency to which the provision applies." Under this statutory scheme, State Fund "is at once both an agency of the state and an insurance carrier. In these two roles, it is self-operating and of a special and unique character." (*P. W. Stephens, Inc. v. State Compensation Ins. Fund* (1994) 21 Cal.App.4th 1833, 1835 [27 Cal.Rptr.2d 107].) "All duties, powers, and jurisdiction relating to the administration of the State Compensation Insurance Fund [are] vested in the Board of Directors . . . ." (Lab. Code, § 57.5; see Ins. Code, § 11781.) ■ The board's authority over the administration of the fund is comparable to that of "the governing body of a private insurance carrier." (§ 11781.) State Fund is designed by the Legislature to "be fairly competitive with other insurers" and intended to be "neither more nor less than self-supporting." (§ 11775.) State Fund "moneys deposited with the State Treasurer are not state moneys . . ." (§ 11800.1) and must be tracked by separate ledger (§ 11800.2). By statute, State Fund's assets are only "applicable to the payment of losses sustained on account of insurance and to the payment of the salaries and other expenses charged against it." (§ 11774.) Profits earned by State Fund may not be retained by State Fund or the state but must be returned to "its insureds as a dividend or credit." (*Gordon's Cabinet Shop v. State Comp. Ins. Fund* (1999) 74 Cal.App.4th 33, 35 [87 Cal.Rptr.2d 541] ["Under the statutory scheme, [State Fund] . . . is not intended to accumulate and hold assets over and above the amounts needed for liabilities, necessary reserves, and a reasonable surplus."]; see § 11775.)

■ Defendants note correctly that under section 11873, subdivision (b), State Fund is subject to the Ralph C. Dills Act (Gov. Code, § 3512 et seq.), which contains the collective bargaining provisions for state employees, and to other provisions of the Government Code including sections 19851 and 19849.[7] The Director is responsible for "managing the nonmerit aspects of

---

[7] Government Code section 19849 provides: "(a) The department shall adopt rules governing hours of work and overtime compensation and the keeping of records related thereto, including time and attendance records. Each appointing power shall administer and enforce such rules. [¶] (b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be

the state's personnel system" and "[i]n general, the [Director] has jurisdiction over the state's financial relationship with its employees, including matters of salary, layoffs and nondisciplinary demotions." (*Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1322 [26 Cal.Rptr.2d 666].) The memorandum of understanding with State Fund employees represented by CASE was negotiated by the Director.[8] As a statutorily created administrative agency, however, the Director "can act only to the extent and in a manner consistent with the legislative delegation of authority." (20 Cal.App.4th at p. 1323, fn. 8.) It is unnecessary to decide whether in the absence of more explicit legislation the Ralph C. Dills Act would authorize the Governor to override the authority of State Fund's board of directors over the administration of State Fund by furloughing its employees, because subdivision (c) of section 11873 expressly provides that it does not.

Section 11873, subdivision (c) provides, "Notwithstanding any provision of the Government Code or any other provision of law, the positions funded by the State Compensation Insurance Fund are exempt from any hiring freezes and staff cutbacks otherwise required by law." As the more specific provision, the express exemption found in subdivision (c) is controlling to the extent it conflicts with other more general provisions of the Government Code. (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 119 [80 Cal.Rptr.3d 326] ["If inconsistent statutes cannot otherwise be reconciled, 'a particular or specific provision will take precedence over a conflicting general provision.' "].)

Defendants argue that section 11873 limits only the Governor's authority to lay off employees and does not preclude the Governor from reducing the

controlling without further legislative action, except that if such provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act." Government Code section 19851 provides: "(a) It is the policy of the state that the workweek of the state employee shall be 40 hours, and the workday of state employees eight hours, except that workweeks and workdays of a different number of hours may be established in order to meet the varying needs of the different state agencies. It is the policy of the state to avoid the necessity for overtime work whenever possible. This policy does not restrict the extension of regular working-hour schedules on an overtime basis in those activities and agencies where it is necessary to carry on the state business properly during a manpower shortage. [¶] (b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

[8] "For purposes of collective bargaining the director . . . [is] designated as the Governor's representative to meet and confer with recognized employee organizations under the Ralph C. Dills Act." (*Tirapelle v. Davis, supra*, 20 Cal.App.4th at pp. 1322–1323.) All CASE members who are a part of bargaining unit 2, whether they are employed by State Fund, another elected official or an executive agency, are subject to the same memorandum of understanding.

number of hours each employee works. The trial court rejected this argument, explaining, "The term 'staff cutback' has to be read in its commonsense meaning, and to the extent that it is informed by the policy concerns expressed in the legislative history as anything to the contrary, it is that a furlough program designed to reduce the availability of staff is a cutback for purposes of the statute."

The issue of statutory interpretation is reviewed de novo. (*California Teachers Assn. v. Governing Bd. of Hilmar Unified School Dist.* (2002) 95 Cal.App.4th 183, 190 [115 Cal.Rptr.2d 323].) " 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' " (*Id.* at p. 191.)

The trial court's conclusion that section 11873, subdivision (c) limits the Governor's authority to impose furloughs on State Fund employees is consistent with the language of the statute, the larger statutory scheme, and the legislative history of the State Fund authorizing legislation. The authority to determine staffing needs is vested in the State Fund board and not the Governor, consistent with State Fund's structure as a "quasi-governmental entity" mandated to be self-sufficient. (*Tricor California, Inc. v. State Compensation Ins. Fund* (1994) 30 Cal.App.4th 230, 241 [35 Cal.Rptr.2d 550].) Defendants' suggestion that the exemption for State Fund employees from "staff cutbacks" prevents layoffs but not a reduction in hours is not sensible. Staff is "cut back" whether hours are reduced or employees are terminated. The reduction in total hours worked by State Fund employees is the same whether achieved by a furlough imposed on all employees or the layoff of only some employees. The exemption in subdivision (c) was enacted "to allow [State Fund]'s executive leadership to exercise its best business judgment on [State Fund]'s staffing needs" with the hope that such flexibility would "have a positive impact on controlling policy costs and providing better service to policyholders." (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Assem. Bill No. 227 (2003–2004 Reg. Sess.) Sept. 29, 2003, p. 15.) This objective would be undermined by the interpretation of the statute that defendants propose. Moreover, defendant's interpretation would not achieve the announced purpose of the Governor's executive order, to improve the state's ability to meet its financial obligations. Any cost savings realized from a furlough of State Fund employees would accrue not to the benefit of the state's general fund, but to the ledger account maintained for the exclusive use of State Fund.

Hence, we conclude that the trial court correctly interpreted section 11873, subdivision (c) and issued a writ of mandate directing the Governor to set aside Executive Order No. S-16-08 insofar as it applies to State Fund employees represented by CASE.

## Disposition

The judgment granting the petition for writ of mandate is affirmed.

McGuiness, P. J., and Siggins, J., concurred.